morning mr. Dixon morning your honors so how do you pronounce your client's last name von Schlichten may it please the court my name is Roger Dixon and with me is my colleague Monica Gorney we represent appellant Eric von Schlichten and with the court's permission I would like to reserve three minutes worth Eric von Schlichten was held in prison for 147 days past his maximum release date and yet he was denied even one day in court to address this wrong the district court erred in granting summary judgment because it found facts it ignored Eric's evidence it ignored that key facts were in dispute it misapplied the law and it relied on irrelevant factors doesn't this case really rise and fall on the accuracy or lack thereof the DC 380s and the 16e as far as the right amount of credit and right I mean the guards at the prison the guys in the in the record room were really only as good as the paperwork was given to them by the county that's what the government's gonna argue here right and the papers that were given by the county government and the sentencing judge were inaccurate the papers that were given by the county were inaccurate the sentencing judge we don't believe that any part of that document the and we're not disputing that that was inaccurate or that we're not saying that the draw the prison record supervisors Dwight Ross had anything to do with the inaccuracy of those but when it came to the judges attention that there was a problem and that his original order wasn't being followed the way he wanted it he tried to correct that and that's why he sent the April 2015 order to the prison and to dross to that didn't that didn't contain any additional detail it did say that that the prison was supposed to give Eric credit for all times there at Northampton County on these on these offenses okay so that was the court's order and then along came the form from the clerk of court the DC three three hundred with it the DC 300 came with the original okay all right supplemental that the April 17th order came by itself it did which even makes it I think your argument more difficult because it then required the defendants mr. draws and that's the only defendants left here correct to look at the records that he had and that the prison had in the DC 300 B file and all the other records the I guess the entire file it's called DC 15 right it is it's called DC 15 and there's nothing in the DC 15 that contradicted the amount of time served that would reduce the the sentence below the September 2018 release date actually in the DC 15 file there were a number of documents that came over from the county when Eric was processed in the state system there were about 90 pages of documents that came over from the county and over 50 of those documents have dates on them indicating that Eric was in the Northampton County Jail as far back in time as 2010 there's also his original sentencing sheets weren't there and there's a pre-sentence investigation report and then there was a disciplinary record that clearly stated his time of entry as in 2010 so that so that it draws had spent a few minutes flipping through the DC 15 file he would have found that that that contradicts what was on the well you know I think in retrospect I mean in retrospect now that we know that there was a hundred he served an additional 142 days it's 142 I think's the right number 147 147 okay and every day counts I'm not minimizing any any extra day but in retrospect you can understand maybe how the where you get done to the 147 but you could look at those records I looked at some of them and the records from the county just does not explain what transpired before the Northampton County Court of Common Case well that's why when dross received the order from the sentencing judge out of the blue it should have raised a red flag in his mind if everything if it checks out at this county forums check out to the and agree with the calculation sheet it should have he should have been asking the question why am I receiving this order at all it was very clear what the yes your honor that's what he checked but if he was and there was no apparent problem at first blush then he should have been questioning why did the judge send me this order you know it's a year and a half down the road and I'm sorry that doesn't necessarily mean that what was on the DC 300 was incorrect that's true your honor and I don't believe it's in the record that the mother that it's in the record that the mother asked the judge to do that but although the errands attorney at the time did have a conference with the judge and out of that conference came the order right here it relies quite a bit on his mother and others around them to help them in these situations but is it of any consequences on that the second order was generated his lawyer didn't think it necessary to elaborate on the order it wasn't until the lawyer subpoenaed the file and did an independent review of file they had to go back to the judge and say hey we need to really spell this out but this is a complicated situation it's significant because the his attorney Eric's attorney did not have all the information at that time the person that did have all the information in Eric's file was Dwight Ross that's why he made he subpoenaed that once he got all the information he needed then he could finally let me say which piece of information if you could pinpoint which piece of information or pieces of information I can give you multiple should have enabled draws to say you know this this maximum date was miscalculated and Von Schlichten should be able to get out in an earlier time which which document in the appendix can the Eric's sentencing sheets from 2011 were in the file run the DC 15 file that's at JA 861 to 80 there was a pre-sentence report that listed the dates that Eric had first come into the system that was at JA 809 and then there were some disciplinary records at JA 789 those were all in and by the way the file is only about an inch thick we're not talking about a large volume of paperwork here and these documents most of them were in the very sections of that file that the records department is responsible for and in the records department you know knows and reviews so in your world view it's incumbent on the record department these folks in the records room to check every sentencing order to make sure it conforms to all the backup paperwork in each individual's prison file? Well it's incumbent upon the records department when they receive an order from a judge out of the blue after they've already sentenced this person and this person's entered the system a year and a half prior to not just do a perfunctory check and then put the order in the file and forget about it it's it's incumbent upon the records department to make sure that they're doing a job and that they are getting to the bottom of and resolving these things and Droz actually testified that it was his job and it's important for the records department to ensure that inmates are released at the correct date and he also testified that in other cases he had called the chambers of the sentencing court to find out what was going on with particular orders when they came in if you didn't understand that he said that this but if it was very vague then why didn't he call the court to do that and he admitted it wouldn't have taken much time to do so. Okay so if we accept your argument that Droz could have done more or if he had looked carefully at that file with the records about half an inch thick how does any of that constitute deliberate indifference? So the second prong of deliberate indifference test which says that whether an official failed to act or acted ineffectually under the circumstances indicating that the response was a product of deliberate indifference he Droz did a perfunctory check like I said he didn't really get at the heart of what the judge was was telling him to do and there were a number of other actions that he said he had done in other cases to resolve these types of things that he did not do here he did not call the judge he did not call the county he did not raise it to superiors of the DOC central office he did not even really if he would have done a check of the file he would have found this out but aside from that he also testified and gave direct evidence of the state of mind which was that he wasn't quote-unquote an advocate for the inmates that he wasn't his job wasn't to chase after credit and that he didn't want to show Eric special treatment by trying to actually resolve this issue and to me that is clear that he is demonstrating that he had the mental state of deliberate indifference as to whether Eric was had the risk of unwarranted detention and that evidence there was no indication in the record at all what he did when he received that they're telling me like he had some special knowledge that there was an underlying problem but but he got a request is he getting credit time he looked at the DC 300 he saw that there are certain credit time reflected there he looked at the release date and saw that that was incorporated in that and without knowing further how should he because your honor the fact that he received that second order itself should have raised a red flag if nothing was if there was ostensibly nothing wrong with those two documents that he compared he should have thought why am I receiving this or why is the judge sending me this if it's just the same thing over again sorry your honor he makes sure he gets credit for non-serve and he checked and he was getting credit for non-serve and isn't that inadequate certainly that doesn't allow him to deliver indifference and not go to prison well it also goes to notice component here and he also had other instances of notice that should have all together with the April order alerted him to the situation for instance Eric's mother did call and talk to dross at some point in 2015 we don't know the exact day but she said that there's a problem with my my son being in prison and even the year before Eric had submitted with the help of another inmate a request form that said he thinks something is wrong with his mass date that was in the file too and then I'm sorry your honor he did he said to go see the court yeah I mean it would be good advice but um the attorney had already seen the judge and had already or had or was in the process of having the judge issue this order that was and also that the Eric's attorney put in a subpoena in May 2015 right after the April order came out that was asking for paperwork from dross and he you know provided he fulfilled that request so all these things together should have been should have been giving him some kind of red flag that there was a problem here he wasn't getting to the bottom of it and I see that I'm out of time your honor. See you back where we both are. Thank you. Good morning. Good morning counsel. Hey may it please the court my name is Kamal Marichly I'm here for the office of the attorney general of Pennsylvania representing FLE dross. I think a very telling point in this case whether one looks at it from the standpoint of deliberate indifference the actual claimed constitutional violation of the eighth amendment or whether one looks at it in terms of qualified immunity in relation to the issue of whether there is deliberate indifference. Is the third order that the court issued and terminated this entire matter. That issue in detail I would suggest necessary detail and adequate detail pointed out the credit that needed to be supplemented in the service of Mr. Bunchlet and sentence. Should the folks in the record room have done a little bit more due diligence when they received that second order? No your honor because the final order indicates what the problem was with the second order. And that is that order reads and now the 17th day of April 2015 Eric Bunchlet is to receive credit for all time served in Northampton County toward his sentence period end of order. Now originally he'd been sentenced on September 6th 2013. So a year and a half after he's initially sentenced Mr. Dross at the prison the records administrator gets this order. I submit to you that there's a variety of ways in which a person in Mr. Dross's position might react. But one of them that's very plausible is following up on Judge Roth's inquiry to my learned opponent is to simply say this guy's been here for a while. Let me check and see and make sure his sentence and his credit is appropriately calculated. Which he does and under the statute of Pennsylvania which is discussed in detail in magistrate Judge Carlson's opinion. He's to address the sentence in terms of an ambit of information that is the sentencing order and the DC 300B. That's all he can really look at. Everything else has if there are any changes or alterations or errors he is required to contact the court of common plea. He can't unilaterally fix things. I agree he can't just release folks. But if he had opened the file and saw that he had been there in 2010 wouldn't that suggest that we might have an issue here? That would suggest perhaps if you wanted to expand the concept of deliberate indifference along the lines of the inquiry from Judge Fisher. Which says that you have to do some sort of investigation or inquiry or independent analysis. Which in the end would not entitle the prison administrator to make any changes in the sentence. But would merely provide him with some basis to alert defense counsel or the court. And the simple fact is if this court would make it clear that it feels that Mr. Droz was deliberately indifferent. Because he didn't do that here under these particular circumstances that would be unprecedented. It would not be foreshadowed by any of the other cases in which deliberate indifference was found or qualified immunity was denied. So in that very point lies qualified immunity in this particular case. Before we get into qualified immunity, let's go back just a second to the April 17th order. Yes. And what that may have or could have indicated or should have indicated to the DOC, Mr. Droz. It does use the terminology, it does use the terminology all time served I believe. All time served in Northampton County. And in the file which he had, there were records that showed that Mr. Von Schlichten was incarcerated for these offenses. In fact there were three cases here. I think there were three concurrent sentences here. Yes. The records do show that he had been in jail since March of 2010 I believe. Yes. There's a reception sheet in there. There are a number of jail. So they were part of that file were they not? Yes. It's 94 pages. It's ECF 35. Yeah. Okay. So you acknowledge that there were records in the file that would show that he was in jail in Northampton County in March of 2010. Yes. I must. Because in fact the record demonstrates that. All right. But. What does that mean? It means that there's some kind of concern that might be raised because the actual sentencing documents as defined by Pennsylvania statute and as defined by policy following from that statute that a prison administrative clerk is supposed to consult in determining the actual length of the sentence do not necessarily correspond with some circumstantial evidence that shows that he was in jail in a way that conflicts with the DC 300. It's not circumstantial evidence. May I? It's more than circumstantial evidence. Well, yes. But there are in fact three sentences. And with every one of those sentences there's a DC 300 in the 94 pages too. And in every occasion three times the documents show a specific paper that in the same 94 pages that says credit for time served and it only discusses 2013. Just as the original sentence documents demonstrate. So you're looking at this and you see there's a reception in 2010. He's gotten some misconducts in 2011. But every time I look there's an official document from the court as well that says 2013, 2013, 2013. We're talking about a records clerk. They are very sensitive because I've argued and lost in the past cases where they went back and fixed the orders and changed them to either provide more or less credit. And those cases were in fact their actions were censured. And those cases were reversed. So they know they can't that the only thing they can do is call the court. But at the same time, if I'm looking at this, I'm thinking I don't know how they got the credit. But it looks like in 2013 they decided when he was sentenced he should only get this credit. I think the question becomes whether or not he had an independent and affirmative duty to make sure everything connected with this man's sentence was correct. When the law tells him all he has to do and all he can do is check the order and the DC-300B that comes with it. Now he gets this cryptic order. It doesn't say why it's been issued. It doesn't say there's a problem we think with credit. It doesn't even say go back and check the credit. But the best you can get from it, I think, or a very reasonable conclusion is that after a year and a half, they want you to go back and make sure you gave them credit for time served. So he does. Now as far as the calls from Mrs. Von Schlichten, he gave her the correct advice. See your attorney. It's a criminal case. He has the public defender who ultimately did craft the order. See your attorney. Talk to the judge. I can't do any more for you. The papers I have show he's doing it. But one must not forget, and one's heart goes out to Mrs. Von Schlichten in a way, considering the type of criminal behavior her son's involved in and his autism. She is basically saying, my son doesn't belong in jail. That's what Mr. Drost testified to. My son doesn't belong in jail. So you get, is she asking to have the credit examined because there's something wrong with the calculation, or is she just decrying what she sees as a merciless system that's unjustly confined her son, who is a man with severe behavioral problems, and that would seem to be a shame to her. And so you have all that going back and forth. After all, this order, there is evidence in the record, an exhibit attached to the reply brief that my colleague in the trial court wrote, Exhibit S, which makes it clear that the person who wrote this order was Mr. Von Schlichten's public defender. I suggest we would not be here. The April 17th order. Yes. I suggest we wouldn't be here if this order wasn't in some way inadequate. And obviously it was thought to be. But that public defender who wrote that order was the same public defender that represented him in 2013 at the sentencing. Correct. And then he writes this order. And he finally, apparently he knew by this time that there were earlier periods of confinement in Northampton County Prison that had not been appropriately credited, that only part of the credit was on the 300B. So he wrote this order, and it just says go and figure out how you can get credit. But it doesn't even say that. That's what he thought it said. But what it says is give him all the credit. It's like an old Saturday Night Live routine where the retiring engineer says at his going-away party, you can never put too much water in a nuclear reactor. So later they have a problem with the nuclear reactor, and everybody's running around saying you can never put too much water in the nuclear reactor. And the other one's saying you can never put too much water in a nuclear reactor. What does that mean? It's inherently elusive. He's supposed to get credit for all time served in Northampton County. Does that mean what he was officially credited with? What do you make of counsel's argument with respect to Mr. Drost saying that he's not an advocate? Does that suggest a certain level of indifference? That's a regrettable statement. I don't think it shows a level of indifference as much as it shows, though, that he has a specific role to play in this. That means he has to give Mr. Von Schlichten what he's due, and he has to do his job with respect to what Mr. Von Schlichten's entitled to. But he's not supposed to do more than that and to try and be an advocate for Mr. Von Schlichten. I think it's unfortunate that he expressed himself in that way, but I don't think it's deliberate indifference. I think it's just a qualification that once he receives an indication like this, he didn't feel it in the form of this April 17th order. He didn't feel it meant now I have to act for Mr. Von Schlichten to go beyond what the statute says I have to look at in determining whether his sentence was appropriately calculated. Thank you for your time, and I appreciate the opportunity. If it's all right with the court, I'd like to respond to a few of those arguments. With respect to the statute, that's something of a red herring because the statute may lay out documents or sources that the records officials can use, but it never says that officials are not allowed to get to the bottom of the situation and to get to the right answer to make sure that they are following what the court has ordered. There's also no policy that we receive in this case that says that either. The policy from the DOC was not made part of the record, and there was some testimony from Drost himself that that was their practice, but we don't have any indication that that was truly in the policy that defined the exact actions that Drost could have taken in this scenario. The notion that if this court reversed summary judgment and said there was a fact question as to deliberate indifference, the notion that that would expand the concept of deliberate indifference is just simply not true. We're not saying that in every case that the records official receives an order of this nature or receives a request from an inmate, they have to open up a massive investigation and all these steps. No, they just have to try to resolve the issue. The records official just has to take affirmative steps to try to resolve it. That's what this court said in Moore v. Tartler. What would you draw the line? What would you suggest the folks in the records department have to go to take these affirmative steps? Well, it's going to change in every situation, but in this case, Drost received a court order on this. In almost every case in the briefs, aside from this, the notice was provided by the inmate himself. And so here it's much stronger. There's an order from the court. If the records official receives such an order, then he has a duty to make sure he understands it and is following what the court is actually saying instead of saying, well, it's vague, but I think it's asking me to do nothing. I'm going to do a perfunctory check and then put it away in the file and forget about it, which is what Drost did here. That is not OK. The order itself wasn't cryptic. The order itself, the April 2015 order, wasn't cryptic. It was very clear what it was saying. The language was clear. It actually, in a lot of ways, mirrored the initial sentencing order, which nobody said was cryptic. So it doesn't seem to be accurate that Drost wouldn't have known what to do when he received that order. And I see him out of time. Thank you very much, counsel. Thank you very much. And thank you and your firm for taking this case on a pro bono basis.